# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3020

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Ignacio de la Pena, | * | |
| | * | [UNPUBLISHED] |
| Defendant - Appellant. | * | |

_____

Submitted: March 18, 2011
Filed: April 29, 2011

_____

Before RILEY, Chief Judge, LOKEN and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Ignacio de la Pena appeals his conviction for conspiracy to distribute marijuana after law enforcement officers seized 450 pounds of marijuana following its delivery to a farm in rural Iowa. De la Pena was arrested driving away from a hotel in a nearby town in a vehicle registered in Colorado to one of the men arrested during or following the raid. On appeal, de la Pena argues there was insufficient evidence to convict him of knowing participation in the conspiracy.

At trial, James Page, one of ten men arrested at the farm who began cooperating when arrested, testified that he had arranged the farm drop site at the request of his off-and-on marijuana supplier in New Mexico, Luis Virgin-Nunez. When Nunez

advised that a large shipment was ready for delivery, Page met Nunez and others at the farm to check it out. Nunez approved the farm but said he needed "No. 1's right-hand man" to look at the site and approve it. Nunez had previously described "No. 1" as the "biggest drug lord in Mexico." Nunez then introduced Page to this "right-hand man," de la Pena, who approved the delivery site and said he needed to place a call to "No. 1" to "let him know that it was okay." Early the next morning, a large milk tanker pulled by a semi truck delivered the marijuana to the farm, where it was seized a short time later. The government also introduced cell phone records tending to show that de la Pena had been in contact with the men at the farm, and a plea agreement signed by de la Pena some months earlier in which he admitted knowing participation in an agreement or understanding to distribute marijuana on the date it was seized at the farm. De la Pena testified in his own defense. He denied participating in the marijuana delivery, provided an exculpatory explanation as to how he came to stay at the hotel with two men and borrow one's car for a trip home to Kansas, and said he was coerced into signing the false plea agreement stipulation by the fear of a long prison sentence.

We have "repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." United States v. Ragland, 555 F.3d 706, 715 (8th Cir. 2009) (quotation omitted). Here, if believed by the jury, Page's testimony, corroborated by de la Pena's earlier confession and circumstantially corroborated by other evidence, was more than sufficient to convict de la Pena of knowing participation in the conspiracy. It was for the jury to assess the credibility of de la Pena's conflicting testimony that, if believed, would tend to establish his mere acquaintance with some members of the conspiracy.

The judgment of the district court is affirmed.

_____

-2-